# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

MARK AYERS, JR.,

      Plaintiff,

v.                                                                                          Civ. No. 16-1159 GJF

NANCY BERRYHILL, *Acting*
*Commissioner of the Social Security*
*Administration*,

      Defendant.

## <u>ORDER</u>

THIS MATTER is before the Court on Plaintiff Mark Ayers, Jr.'s ("Plaintiff's") "Motion to Reverse and Remand for Rehearing, With Supporting Memorandum" ("Motion"), filed on May 10, 2017. ECF No. 20. The Commissioner responded on July 7, 2017. ECF No. 22. Plaintiff filed his Reply on July 19, 2017. ECF No. 23. Having meticulously reviewed the entire record and the parties' briefing, the Court finds that Plaintiff's Motion is not well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, and for the further reasons articulated below, the Court will **DENY** Plaintiff's Motion.

## I.      BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on January 2, 2013. Administrative R. ("AR") 11. Plaintiff alleged a disability onset date of July 1, 2011. AR 11. The Social Security Administration ("the SSA") denied both claims on April 25, 2013, and again upon reconsideration on September 4, 2013. AR 11. Plaintiff then requested a hearing, which was held in front of Administrative Law Judge ("ALJ") Frederick E. Upshall, Jr. on April 16, 2015. AR 11. Plaintiff appeared from Albuquerque, New Mexico, while the ALJ presided from El Paso, Texas. AR 11. Donna O.

Johnson, a vocational expert ("VE"), appeared at the hearing telephonically and testified. AR 11. Plaintiff was represented by counsel during the hearing. AR 11.

On June 15, 2015, the ALJ issued his decision that Plaintiff was not disabled from July 1, 2011, through the date of his decision. AR 20. Plaintiff then requested that the SSA's Appeals Council review the ALJ's decision, a request that was denied on September 16, 2016. AR 1-5. As a consequence, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2016). Plaintiff timely filed his appeal in this Court on October 20, 2016. ECF No. 1.

## II.     PLAINTIFF'S CLAIMS

Plaintiff argues that the ALJ's assessment of Plaintiff's residual functioning capacity ("RFC") was based on improper weighing of medical source evidence, and that in developing Plaintiff's RFC, the ALJ failed to explain how he evaluated the evidence. Pl.'s Mot. 4, ECF No. 20. Plaintiff also argues that the ALJ erred by not including any physical limitations in Plaintiff's RFC and by not finding any physical impairments to be severe. *Id.* at 19-20. Finally, Plaintiff contends that the VE's testimony cannot constitute substantial evidence to support the ALJ's finding that Plaintiff is not disabled. *See id.* at 20.

## III.    APPLICABLE LAW

### A.     Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[1] The Court's review of that final agency decision is both factual and legal. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981 (2016); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.")

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

## B.     Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability.  *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1.  If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC").  *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e).  In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to determine if the claimant is still capable of performing his past work.  *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f).  If a claimant is not prevented from performing his past work, then he is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his or her past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy.  *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV.    THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016, and that Plaintiff had not engaged in substantial gainful activity since July 1, 2011, the alleged disability onset date.  AR 13.  At step two, the ALJ found that Plaintiff had the following severe impairments: anxiety, depression, attention deficit/hyperactivity disorder ("ADHD"), and tumor removal/status-post tumor surgery.  AR 13. The ALJ also considered Plaintiff's allegations of gout, elbow tendinitis, and back pain, but found them to be non-medically determinable, and thus not severe.  AR 13.  In addition, the ALJ found that the medical evidence of record failed to show any evidence of stenosis or arthritis to support Plaintiff's allegation of back pain, and that Plaintiff's elbow condition did not meet the durational requirement set forth by 20 C.F.R. § 404.1509 (2012).[2]  AR 13.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 14.  The ALJ specifically considered Listing 12.04 for affective disorders such as depression, and Listing 12.06, for anxiety disorders.  Engaging in the required Psychiatric Review Technique ("PRT"), the ALJ found that the paragraph B criteria were not satisfied because Plaintiff's mental impairments did not result in at least two of the following limitations: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  AR 14.  While the ALJ found that Plaintiff had moderate to marked difficulties in

---

[2] 20 C.F.R. § 404.1509 was last updated in 2017, but the version of the regulation in effect when Plaintiff filed his disability applications on January 2, 2013,  was last updated in 2012.  20 C.F.R. § 404.1509 states, "Unless [the plaintiff's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."

concentration, persistence, or pace as part of the PRT, the ALJ found that Plaintiff had no more than a mild restriction in activities of daily living, and no more than mild difficulties in social functioning. AR 14. The ALJ also found that Plaintiff had not experienced any episodes of decompensation that had been of extended duration. AR 14. Last, the ALJ found that the evidence did not satisfy the paragraph C criteria. AR 14-15.

In addition to engaging in the PRT, the ALJ referred to the opinions of the state disability consultants, who concluded that Plaintiff's impairments neither met nor equaled the severity of any listed impairment. AR 15. The ALJ adopted these opinions, finding that they were "well reasoned and supported by the evidence of record." AR 15.

At step four, the ALJ determined Plaintiff's RFC as follows:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine, repetitive, unskilled tasks, in a work environment that does not require any fast-paced production, involving only simple work related decisions, with few if any changes in the workplace. Further, he must not have any specific reading requirements and instructions should be by way of demonstration with a [s]pecific reasoning level of one.

AR 15. To determine Plaintiff's RFC, the ALJ evaluated Plaintiff's credibility and reviewed medical evidence in the record. AR 15-18. The ALJ also considered opinions from examining psychologist Dr. John King, Ph.D, a consulting examiner, Dr. Valerie Valle, Psy.D., and two non-examining consulting psychologists who provided opinions at the request of State Disability Determination Services. AR 16-18. The ALJ also reviewed medical records from First Choice Community Healthcare; progress notes from Plaintiff's counselor, Angelique J. Lawhenore, Licensed Professional Clinical Counselor ("LPCC"); Plaintiff's disability reports to the SSA; the third party function report from Plaintiff's grandfather; Plaintiff's testimony during the hearing; and the VE's testimony during the hearing. AR 11-20.

*Dr. Valerie Valle, Psy.D.*

Dr. Valle is a consulting examiner who conducted a mental status examination of Plaintiff on April 12, 2013. AR 333. Dr. Valle wrote that Plaintiff alleged that he had a learning disability. AR 333. Dr. Valle observed that Plaintiff's gait and general body movements were within normal limits. AR 333. Dr. Valle opined that Plaintiff's speech, language, communication, and attention were all within normal limits. AR 333. Plaintiff's mood was euphoric, his affect was appropriate to thought content. AR 333.

Plaintiff reported to Dr. Valle that he had fatigue and anxiety about his finances. AR 333. Dr. Valle determined that Plaintiff's sleep hygiene was poor because he had no set bed time and slept until noon. AR 333. Dr. Valle described Plaintiff's activities of daily living, based on his account, as "watching TV for most of the day, household chores, caring for his dogs, and visiting his grandfather and partner." AR 333. Plaintiff also told Dr. Valle that his hobbies included fishing and hunting. AR 333.

With respect to his education, Plaintiff told Dr. Valle he was in special education from the third through twelfth grades. AR 333. Plaintiff also told Dr. Valle that he was prescribed Ritalin as a child, and last took it at the age of ten. AR 333. While Plaintiff was a senior in high school, after having a car accident due to driving while intoxicated, physicians discovered a brain tumor on Plaintiff's brain stem, which was removed. AR 333. After the surgery, Plaintiff "resumed normal academic and cognitive demands consistent with his pre-injury functioning." AR 333.

Regarding his work history, Plaintiff reported to Dr. Valle that he had been unemployed since July 2011, and was fired from his last two jobs because of substance abuse.[3] AR 333.

_____

[3] Plaintiff testified at the hearing that his most recent job was at Kentucky Fried Chicken. AR 34 ("The last job I had was in 2011, and it was at KFC."). However, Dr. Valle's report does not mention this job, and instead refers to

Plaintiff stated that he enjoyed his job at a prison, which was his last job, even though it was difficult for him to complete written reports because of poor spelling and slow pace. AR 333. Plaintiff was ultimately fired from that job due to being charged with Driving Under the Influence ("DUI"). AR 333. Prior to working at the prison, Plaintiff worked as a stocker at the Smith's grocery store for five years, but was ultimately fired from that position because of a positive test for marijuana. AR 333.

Dr. Valle's diagnostic impressions were adjustment disorder with mixed depressed and anxious mood, and financial and occupational problems. AR 334. Dr. Valle ultimately concluded: "While a learning disability is likely to be a causal factor in [Plaintiff's] general intellectual functioning, he has adapted well to his limitations in reading/writing and learned to utilize his strengths. [Plaintiff] would function well in occupations with limited writing and detailed or technical reading. As [Plaintiff] says, 'I can get a job and stick to it if it's easy.'" AR 334.

Dr. Valle found that Plaintiff was not limited in the following categories: understanding and remembering short and simple instructions, ability to interact with the public, coworkers, and supervisors, ability to be aware of normal hazards and react appropriately, or ability to use public transportation or travel to unfamiliar places. AR 334. Dr. Valle found that Plaintiff was mildly limited in the following categories: understanding and remembering detailed or complex instructions, ability to carry out instructions, ability to work without supervision, and ability to adapt to changes in the workplace. AR 334. Dr. Valle found that Plaintiff was mildly to

---

Plaintiff's job at a prison as his most recent job. AR 333. Additionally, Plaintiff told Dr. King that his most recent job was as a mechanic in 2013. AR 405 ("He last worked in 2013 as a mechanic and reportedly was fired because he did not make enough money to cover his child support payments and this was a hassle for his employer."). This discrepancy was not explored during the hearing.

moderately limited in ability to attend and concentrate. AR 334. Dr. Valle did not specifically opine on how long Plaintiff could be expected to maintain his concentration.

   *Dr. William Logan, M.D.*

   Dr. Logan is a non-examining consultative psychologist who reviewed Plaintiff's records on April 25, 2013. Dr. Logan reviewed Dr. Valle's evaluation as well as medical evidence from the University of New Mexico Health Sciences Center ("UNMH"), Plaintiff's disability report to the SSA, and his grandfather's disability report to the SSA. AR 74-75. Dr. Logan opined that Plaintiff's grandfather's description of Plaintiff's activities of daily living was consistent with Plaintiff's own report of his activities of daily living, and observed that Plaintiff did not take any medication and had not seen any doctors or specialists. AR 76. Prior to Plaintiff's evaluation by Dr. Valle on April 12, 2013, Plaintiff's medical records consisted only of his Emergency Department visit at UNMH on August 7, 2010[4] [AR 323-329], and records from his counselor starting April 10, 2013 [AR 385-86].

   Engaging in the PRT, Dr. Logan found that Plaintiff had affective disorder, mild restriction in activities of daily living, and mild difficulty in maintaining concentration, persistence, or pace. AR 77. Dr. Logan concluded, "Overall, [Plaintiff's] mental impairment is non-severe."[5] AR 77. According to Dr. Logan, a non-severe impairment meant that Plaintiff was not significantly limited in physical or mental ability to do basic work activities. AR 77. Notably, Dr. Logan determined that no RFC or mental RFC assessment was associated with Plaintiff's claim. AR 78. Dr. Logan also opined that there were no other medical source

---

[4] These records concern an assault at a park and a one-time-only visit to the Emergency Department. AR 323-29. They are otherwise not relevant to Plaintiff's disability claims.
[5] Dr. Howard Atkins, Ph.D., is a non-examining consulting psychologist who reviewed Plaintiff's records on August 30, 2013. AR 87. Dr. Atkins affirmed Dr. Logan's initial determination, writing that there was no additional evidence available for the reconsideration evaluation. AR 86. Dr. Atkins's opinion is otherwise identical to Dr. Logan's opinion. AR 82-88.

opinions that were more restrictive than his findings, even though Dr. Valle concluded that Plaintiff was mildly to moderately limited in his ability to attend and concentrate. AR 79.

*Dr. John H. King, Ph.D.*

Dr. Saverio Sava, M.D., one of Plaintiff's treating physicians, referred him to Dr. King for evaluation following Plaintiff's report of memory loss and concentration problems. AR 404. Dr. Sava requested that Dr. King evaluate Plaintiff "in order to assess his current level of functioning and to make treatment recommendations." AR 404. Dr. King evaluated Plaintiff on February 19, 2015, by interviewing him and administering several standardized tests. AR 404-406.

Plaintiff reported "difficulties with cognitive functioning since childhood" and "life-long difficulties with attention/concentration (e.g. is easily distracted, has to re-read material, scattered thoughts, daydreaming, off task, difficulty with multi-step commands) and difficulties with short-term memory (difficulty remembering names or conversations)." AR 404. Plaintiff reported problems with word finding, slow reading, multi-tasking, planning, misplacing things a lot, verbal and behavioral impulsivity, poor time management and poor task initiation. AR 404. According to Dr. King, "[Plaintiff] denied significant depression, but endorsed significant anxiety." AR 404.

Regarding activities of daily living, "[Plaintiff] reported full independence for hygiene/grooming, cooking, medication management, [and] managing finances," although Plaintiff stated that he had not driven in over four years because his license was suspended due to his failure to pay child support. AR 405. Plaintiff advised that he had been diagnosed with ADHD as a child and was prescribed Ritalin, which was helpful. AR 405. Plaintiff's wife

reported that he had recently been prescribed medication for ADHD that made him agitated, but she could not remember the name of the medication. AR 405.

With respect to substance abuse, Plaintiff reported that he stopped drinking alcohol on December 22, 2010, and completed a seven month substance abuse treatment program. Regarding his past work history, Plaintiff told Dr. King that he last worked in 2013 as a mechanic and was fired because he did not make enough money to pay his child support payments, which "was a hassle for his employer." AR 405. Plaintiff also previously worked as a stocker at grocery store, as a tractor operator at a cotton farm, and as a correctional officer at a prison. AR 405.

During the evaluation, Dr. King observed that Plaintiff's speech was "unremarkable, except for speaking quickly on occasion and making tangential comments." AR 406. Dr. King wrote, "Problems with attention and distractibility were observed (e.g. he required occasional repetition of task instructions and seemed to use conversation as a distraction), as well as being restless/fidgety (e.g. foot tapping)." AR 406. Dr. King also observed Plaintiff's mood to be "very anxious," noting that Plaintiff "had to take a few breaks as he was sweating and short of breath." AR 406.

As measured by the standardized tests, Plaintiff's working memory was a significant weakness, but his processing speed was a relative strength. AR 406. Dr. King noted that Plaintiff's working memory was moderately impaired, but that "[Plaintiff] performed better on more complex attention tasks (i.e., he required additional mental challenge to perform at his best)." AR 407. Dr. King also noted that Plaintiff's single trial learning was somewhat weak, but that his learning slope was average, in the 50th percentile. AR 407. Dr. King concluded that Plaintiff's recall "actually declined with the provision of cues." AR 407. Dr. King also

concluded that Plaintiff's delayed memory, or his ability to consolidate and retain learned information over time, was intact.  AR 407.

Dr. King's general conclusion regarding Plaintiff was that he "does not have a primary memory disorder, but rather impaired attention [that] necessitates repetition and with repetition he is able to learn new information."  AR 409.  Dr. King continued:

> Overall, there was no evidence for memory loss. In fact, [Plaintiff's] verbal and visual memory was low average to average and was somewhat of an area of cognitive strength for him.  Rather, the difficulties he reported as occurring in his life are the result of impaired attention/concentration and not a memory deficit per se.  Furthermore, recent decline in cognitive functioning as reported by [Plaintiff] and his wife is likely due to increased anxiety and depression.

AR 409.  Dr. King's diagnostic impressions were: ADHD, combined type; generalized anxiety disorder; and unspecified depressive disorder.  AR 409.

*Plaintiff's Testimony*

Plaintiff testified that he had been in special education as a child due to a learning disability.  AR 32-33.  Plaintiff testified that his last job was in 2011 at Kentucky Fried Chicken as a part-time cook.[6]  AR 34.  Plaintiff also testified that he had been a full-time corrections officer from 2009 to 2010.  AR 35.  As part of that job, Plaintiff had to write reports on inmates who were violating prison rules, which was difficult for him because he could not spell, which necessitated re-writing his reports more than once.  AR 35-36.  Plaintiff was written up once for a mistake during that job, but testified that he learned from the mistake and never repeated it.  AR 38.  Plaintiff testified that he was fired from that job because he was charged with DUI.  AR 37.  Before his job at the prison, Plaintiff worked from 2006 to 2009 in Texas at a cotton farm driving a tractor.  AR 38.  Plaintiff left that job to return home when his father became sick.  AR 38.  When the ALJ asked Plaintiff whether he had trouble with the job on the cotton farm,

---

[6] *See supra* note 5.

Plaintiff testified that he broke equipment such as rigs because he was "not very good with the tractor." AR 39. Prior to the job at the cotton farm, Plaintiff was a night stocker at Smith's grocery store from 2002 to 2006. AR 39. Plaintiff was fired from the Smith's job because he tested positive for marijuana, but otherwise had no problems in that job. AR 40. In 2001, prior to the Smith's job, Plaintiff worked for Ace Hardware loading hay for customers. AR 40.

Regarding his medical conditions, Plaintiff testified that he takes medication for gout flare-ups, and ibuprofen for the tendinitis in his right elbow. AR 42. Plaintiff also took dextroamphetamine for sixty or ninety days to help keep him awake, but stopped because he did not like its side effects. AR 42. Plaintiff also described his longstanding memory problems, stating that he was forgetting things, and had not noticed that his memory problem had worsened until a couple of years ago. AR 45. This spurred Plaintiff to seek an evaluation regarding his memory by Dr. King. *See* AR 46. Plaintiff noted that he has had anxiety all his life, and upon prompting from his attorney, confirmed that he was diagnosed with ADHD. AR 46-47, 49. Plaintiff explained that he cannot currently obtain treatment for his anxiety because he does not have any transportation to see his doctors. AR 49.

Plaintiff testified that he has severe elbow pain, but also testified that his elbow did not bother him until "probably about two months ago, maybe longer." AR 48. Plaintiff described his issues with gout, stating that the "flare-ups of gout [are] terrible. When it flares up, I can't walk on it. It hurts so bad that I'm crawling on my hands and knees. And the medication that I got for it, you have to take it right before the flare-up, but sometimes it doesn't even work." AR 50. Plaintiff testified that he suffers these flare-ups of gout once a week, and each flare-up lasts from three days to two weeks. AR 51. Notably, Plaintiff testified that he has had problems with

gout for the last ten years, and that he has experienced flare-ups once a week for the last ten years. AR 51-52. The gout occurs only in Plaintiff's right ankle. AR 53.

Plaintiff explained why he cannot work:

I have a hard time learning the stuff that [ ] they were trying to teach me. I forget it. You know, they teach me something one day, and tomorrow, I'm asking you questions -- hey, do I do this or do I do that, you know, and I'll forget it, you know. And then I get nervous because I'm afraid that the person that's in front of me is going to tell me, hey, you know - because I worked fast food. You know, I worked at KFC, and when you mess up on the register and you try to count money back that you don't know how to count back and the customer gives you – . . . It makes me mad, you know.

AR 42. The ALJ then asked Plaintiff how he learned to be a stocker at Smith's, and worked there for four years without problems until he was drug tested. AR 43. Plaintiff responded that his dad taught him how to stock. AR 43. When the ALJ asked Plaintiff how he was able to do his corrections officer job with relative success, since he was written up only once in a year, Plaintiff explained that he had been "pretty lucky[.]" AR 43. Plaintiff testified that he could probably do the hay loader job that he had been performing at Ace Hardware in 2001. AR 43.

*Vocational Expert Testimony*

The ALJ asked Donna Johnson several hypotheticals with different formulations of an RFC for Plaintiff. The ALJ's first hypothetical described someone with Plaintiff's age, education and work background, who had no exertional limitations, but would be limited to simple, routine, repetitive, unskilled tasks in a work environment that did not require any fast-paced production; involving only simple, work-related decisions with few, if any, changes in the work place, with no significant reading requirements, instructions by way of demonstration, and the job limited to reasoning level 2. AR 58-59. The ALJ asked whether such an individual could perform any of the jobs in Plaintiff's work history. AR 59. The VE testified that the hypothetical individual with all of those limitations could not perform any of the jobs in

Plaintiff's work history as the Department of Labor describes those jobs, but as Plaintiff described the hay loading job, the hypothetical individual would be able to perform that job. AR 59. The ALJ then asked the VE whether the hypothetical individual could perform any work in the national economy. AR 59. The VE testified that the individual could perform simple, routine, Specific Vocational Preparation ("SVP") 2 jobs of laundry worker, hand packager, and kitchen helper or dishwasher. AR 59-60.

The ALJ then modified the hypothetical, asking whether instead of a reasoning level 2, the job had a reasoning level 1, and whether the same hypothetical individual could perform any jobs in the national economy. AR 60. The VE testified that the individual could be a cleaner at the light exertional level (DOT # 709.687-010), a cleaner at the medium exertional level (DOT # 381.687-026), and a poultry worker[7] (DOT # 525.687.070), all with a SVP of 2. AR 60. The ALJ then modified the hypothetical again, for jobs with both a reasoning level 1 and 2, to include a limitation that the person needed to be reminded of tasks to be performed as frequently as two or three times a day, and whether that additional limitation would impact the ability of the person to do any of the jobs that the VE had thus far identified. AR 60-61. The VE testified that reminders twice a day, once in the morning and once in the afternoon, would not impact the person's ability to perform those jobs, but that "a chronic pattern of having to be reminded two times a day or more every single day" would cause a person to be unable to sustain a "very simple, unskilled job." AR 61. The ALJ then asked the VE whether the same hypothetical person, who required reminders twice per day indefinitely, could sustain his employment, and whether that same person could do any job in the national economy, and the VE said no. AR 61. The ALJ followed up, asking the VE whether, instead of indefinite reminders twice a day, the

---

[7] The parties and the ALJ refer to this job as "poultry dresser" [Pl.'s Mot 13, 20, ECF No. 20; Def.'s Resp. 5, 8, 13, ECF No. 22; AR 19], but the VE referred to it as "poultry worker" during her testimony. AR 60.

hypothetical person was "unable to consistently concentrate or stay on task for two-hour periods of time," whether that limitation would impact the person's ability to perform any of the jobs the VE identified. AR 61. The VE responded that the person would not be able to perform any job in the national economy. AR 61-62.

## V. ANALYSIS

Plaintiff urges the Court to remand because, according to Plaintiff, Plaintiff's RFC does not reflect all of Plaintiff's limitations and the ALJ did not find Plaintiff's physical impairments to be severe. Pl.'s Mot. 13-20. Plaintiff further argues that the ALJ did not adequately explain why he afforded great weight to Dr. Valle's opinion [*Id.* at 18-19], and that the VE testimony was based on hypothetical questions from the ALJ that did not take into account all of Plaintiff's limitations. *Id.* at 20-22.

Contrary to Plaintiff's contentions, the Court concludes that the ALJ's RFC is supported by substantial evidence, including the ALJ's decision finding Plaintiff's physical impairments to be non-severe. The ALJ adequately, if not in great detail, explained why he afforded great weight to Dr. Valle's opinion, describing how her opinion was consistent with Dr. King's opinion and other medical evidence of record. Because the ALJ's RFC is supported by substantial evidence, and the ALJ's hypotheticals to the VE included the RFC's limitations, the VE's testimony constitutes substantial evidence in support of the ALJ's finding that Plaintiff is not disabled. The Court therefore rejects Plaintiff's arguments and affirms the ALJ's decision.

### A. Plaintiff's RFC takes into account all of his limitations and is supported by substantial evidence.

Plaintiff asserts that his RFC is fatally flawed because it allows for a SVP 1 job, which Plaintiff's limitations exclude. Pl.'s Mot. 15. Specifically, Plaintiff's limitations are that he requires repeated demonstrations and instructions and frequent rest periods. *Id.* According to

Plaintiff, he cannot do a SVP 1 job because it requires a short demonstration only to learn how to do it, which is incompatible with Plaintiff's need for repeated demonstrations and frequent rest periods. *Id.* The RFC also, according to Plaintiff, did not take into account Dr. King's limitation that Plaintiff required repeated instructions, *id.* at 16-17, and the RFC did not include any of Plaintiff's alleged physical limitations. *Id.* at 19-20. Plaintiff also argues that the ALJ found that he had a moderate to marked limitation in concentration, persistence, and pace at step three, which the ALJ did not account for in his RFC. *Id.* at 16.

The Commissioner responds by summarizing the ALJ's explanation for his RFC finding, and how the ALJ took into account Dr. King's opinion when he determined Plaintiff's RFC. Def.'s Resp. 7-8, ECF No. 22. The Commissioner also accurately points out that Dr. King "did not opine that Plaintiff would require extra breaks to work" and that "neither Dr. Valle nor the state agency consultants endorsed such a limitation in their opinions." *Id.* at 9. According to the Commissioner, the ALJ was therefore "not required to include this unsupported limitation in his RFC finding or his hypothetical to the vocational expert." *Id.* (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000)).[8] The Commissioner additionally argues that although the ALJ found that Plaintiff had a moderate to marked limitation in concentration, persistence, and pace at step three, that determination was completed as part of the PRT, which is not an RFC assessment, and thus the ALJ was not required to incorporate that limitation into the RFC. Def.'s Resp. 11-12. Finally, the Commissioner notes that the ALJ explained why he did not include any exertional or physical limitations in the RFC, and that Plaintiff did not show, and no medical source opined, that Plaintiff could not do light work. Def.'s Resp. 13.

---

[8] The Court notes that although *Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000) does not appear to stand for the proposition for which the Commissioner cited it, Def.'s Resp. 9, ECF No. 22, the Commissioner's point that no medical opinion found that Plaintiff required frequent rest breaks during work is nonetheless well taken.

## 1. The RFC accounted for every limitation for which there was substantial evidence.

No medical source opined that Plaintiff could not work, that Plaintiff's physical impairments limit his ability to work, or that Plaintiff requires frequent rest breaks. Dr. Valle found that Plaintiff was mildly limited in the following categories: understanding and remembering detailed or complex instructions, ability to carry out instructions, ability to work without supervision, and ability to adapt to changes in the workplace. AR 334. Dr. Valle found that Plaintiff was mildly to moderately limited in his ability to attend and concentrate. AR 334. Dr. Valle did not specifically opine on how long Plaintiff can be expected to maintain his concentration. Dr. Valle concluded that Plaintiff "would function well in occupations with limited writing and detailed or technical reading." AR 334. In terms of vocational limitation, Dr. King concluded only that "there was no evidence for memory loss" and that "with repetition [Plaintiff] is able to learn new information." AR 409.

The ALJ's RFC took into account each of these observations and limitations. The ALJ limited Plaintiff to "simple, routine, repetitive, unskilled tasks, in a work environment that does not require any fast-paced production, involving only simple work related decisions, with few if any changes in the workplace." AR 15. These limitations took into account Dr. Valle's mild limitations *and* Dr. King's concern that Plaintiff requires repetition to overcome his impaired attention. These limitations even took into account Plaintiff's concerns that the fast-paced nature of his work at KFC made him nervous and upset him, and limited him to work that does not require fast-paced production. *See* AR 42. The RFC continued, "Further, he must not have any specific reading requirements and instructions should be by way of demonstration with a

[s]pecific reasoning level of one."[9]  AR 15.  Again, these limitations reflected Dr. Valle's concern that Plaintiff suffered from a learning disability, and that writing and detailed or technical reading were difficult for him.

Plaintiff's primary argument is that the RFC did not account for Plaintiff's need for repeated instructions.  Pl.'s Mot. 13-17.  The Court disagrees.  Dr. King opined only that "Plaintiff's impaired attention necessitates repetition and with repetition [Plaintiff] is able to learn new information."  AR 409.  Dr. King did not provide any other detail.  Additionally, Dr. King did not specify that Plaintiff's impaired attention necessitated repeated *instructions*. Plaintiff's argument invites this Court to expand Dr. King's limitation beyond what was found below, which this Court will not do.  The ALJ's RFC limited Plaintiff to repetitive work, which takes into account Dr. King's conclusion that Plaintiff's impaired attention required repetition.

Especially when read together with Plaintiff's testimony and his work history, it is not clear that Plaintiff requires repeated *instructions*.  Plaintiff testified that he could return to his old job of loading and unloading hay at Ace Hardware.  AR 43.  The ALJ asked Plaintiff how, if his memory problems inhibit his ability to remember instructions, he was able to be a stocker at the Smith's grocery store, and Plaintiff testified that his father taught him how to stock.  AR 43. There is simply no evidence in the record indicating that Plaintiff cannot again learn how to do a simple, repetitive, unskilled job.  None of the medical opinions concerning Plaintiff stated that his attention problems preclude him from learning how to do a simple, unskilled job.  Indeed, Dr. King specifically concluded that Plaintiff did not have a memory problem, but an impaired attention problem.  AR 409.  Notably, none of the consultative examiners rendered an opinion on

---

[9] The parties and the ALJ do not clarify or discuss what "specific reasoning level" means or how it is defined. However, the Court understands the ALJ's reference to "specific reasoning level of one" to be *different* from the references to Specific Vocational Preparation ("SVP"), based in part on the Court's reading of the ALJ's questioning of the VE and her testimony, and based in part on the parties' briefs.  The Court relies on this understanding throughout this opinion.

the amount of time that Plaintiff can sustain his attention, and the state agency examiners were also silent on that topic. Not one medical opinion concluded that Plaintiff is incapable of sustaining his attention long enough to learn instructions. In fact, Dr. Valle found that Plaintiff was not limited in understanding and remembering short and simple instructions, and only mildly limited in understanding and remembering detailed or complex instructions. AR 334. Dr. King concluded that Plaintiff actually "required additional mental challenge to perform at his best" when performing complex attention tasks. AR 407. All of this evidence indicates that Plaintiff does not require repeated *instructions*.

Even if Plaintiff did require repeated instructions, the three jobs that the VE found that Plaintiff can do with the ALJ's RFC have a SVP of 2. AR 19. According to the Dictionary of Occupational Titles[10], "Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. . . . [SVP] 1 [requires] [s]hort demonstration only[; SVP] 2 [requires] [a]nything beyond short demonstration up to and including 1 month[.]" Dictionary of Occupational Titles, 4th ed., App. C (1991), 1991 WL 688702. That the jobs were classified as SVP 2 specifically took into account Plaintiff's need for repetition, including even repeated instructions, as SVP 2 jobs require anything beyond a short demonstration, up to and including one month.

The ALJ also thoroughly explained how the RFC incorporated the limitations from the medical opinions. The ALJ wrote, "[Dr. King's] concern [that Plaintiff required repetition to

---

[10] The Department of Labor no longer updates the Dictionary of Occupational Titles ("DOT"), which was last updated in 1991. https://www.onetcenter.org/questions/8.html (last accessed Jan. 26, 2018). Instead, the department utilizes ONET, which is an online database of standardized and occupation-specific descriptors on almost 1,000 occupations covering the entire U.S. economy. https://www.onetcenter.org/overview.html (last accessed Jan. 26, 2018). However, regulations require the Commissioner to take administrative notice of job information provided by the DOT. 20 C.F.R. § 404.1566 (2017).

learn new information] has been addressed in the [RFC] by limiting [Plaintiff] to simple, repetitive tasks. Indeed, the undersigned finds that this logic follows, as while [Plaintiff] does have episodes of mental decline[,] overall [ ] those episodes transpire only when [Plaintiff] is under undue familial stress or financial stress[.]" AR 16. The ALJ continued, "[W]hen [Plaintiff's] stress level is decreased, he reports greater coping skills and greater ability to handle work pressures. . . . Dr. Valle had similar findings . . . More recently, this view of [Plaintiff] has sustained, as his providers continued to find him with proper orientation, cooperative mood, and adequate alertness, despite his allegations of distress." AR 16-17. The ALJ cited to Ms. Lawhenore's progress notes for Plaintiff, records from his medical providers at First Choice Community Healthcare, Dr. King's opinion, and Dr. Valle's opinion, finding them to be consistent with each other and supportive of his RFC determination. AR 16-17.

## 2. The ALJ's consideration of Plaintiff's physical impairments was supported by substantial evidence.

Plaintiff's arguments that the ALJ did not classify his physical impairments as severe, and did not include exertional limitations in the RFC, amount to a request that the Court re-weigh evidence, which the Court declines to do. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)) ("[W]e will not reweigh the evidence or substitute our judgment for the Commissioner's."). The ALJ devoted a substantial amount of detailed explanation to Plaintiff's allegations of physical impairments and the ALJ's discounting of them. First, with respect to Plaintiff's gout, Plaintiff testified that he suffers flare-ups once a week, and each flare-up lasts from three days to two weeks. AR 51. Notably, Plaintiff testified that he has had problems with gout for the last ten years, and that he has experienced flare-ups once a week for the last ten years. AR 51-52. The ALJ wrote that Plaintiff's gout had not "prevent[ed Plaintiff] from working in the past. His past ability to work

with this condition undercuts [Plaintiff's] allegation that this condition now precludes his employment at this time." AR 17-18. Indeed, Plaintiff testified that he could return to his job loading hay, and did not mention his gout as a potential problem in returning to that work. AR 43.

Further, there was no medical opinion regarding Plaintiff's gout and its effect, if any, on his ability to work, and Plaintiff's mere references to complaints of pain due to his gout flare-ups do not constitute sufficient evidence to establish disability. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) ("A claimant's subjective allegation of pain is not sufficient in itself to establish disability."). When the ALJ asked Plaintiff why he felt that there was no work he could perform, Plaintiff discussed his alleged memory issues, and his anxiety if he makes a mistake. AR 42. Plaintiff did not mention that he could not work because of his gout, his back pain, his tendinitis in his elbow, or any other physical impairment.

Regarding Plaintiff's allegations of elbow pain, Plaintiff testified during the hearing that his elbow had only been painful for two months prior the hearing. AR 48. As the ALJ noted in his decision, Plaintiff's elbow pain does not meet the durational requirement. *See* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."). Again, Plaintiff did not testify that he cannot work because of his elbow pain, and none of the medical sources so opined. The ALJ therefore did not err by finding Plaintiff's elbow pain to be non-severe, and did not err by not accounting for it in Plaintiff's RFC.

Concerning Plaintiff's low back pain, the ALJ noted that X-rays from August 2014 of Plaintiff's spine were unremarkable aside from minimal degenerative changes. Def.'s Resp. 3; AR 13, 397-99. Although Plaintiff was referred to physical therapy for back pain, and the record

shows that he went for a physical therapy appointment the next day, there were no additional records concerning that physical therapy. AR 389. Plaintiff complained of back pain on July 15, 2014, September 23, 2014, and January 30, 2015, and the hearing occurred on April 16, 2015, so it is also not clear that Plaintiff's back pain met the durational requirement of twelve months or longer. AR 338, 387, 413. None of the medical sources opined that Plaintiff could not work because of his back pain, and notably Plaintiff testified that he could return to his job loading hay, which does not seem consistent with severe back pain. *See* AR 42. Therefore, the Court concludes that the ALJ did not err by finding Plaintiff's back pain to be non-severe or by not accounting for it in Plaintiff's RFC.

### 3. The ALJ was not required to take into account Plaintiff's step three limitation in the PRT as part of Plaintiff's RFC.

Finally, the ALJ did not err by not accounting for his finding at step three in the PRT that Plaintiff had moderate to marked difficulties with regard to concentration, persistence, or pace. *See* AR 14. The ALJ made this finding as part of the PRT. 20 C.F.R. § 404.1520a(c) (2011)[11] requires the ALJ to evaluate a mental impairment by rating a plaintiff's functional limitations in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. The ALJ uses a five-point scale to rate a plaintiff's degree of limitation in those areas, except for episodes of decompensation: none, mild, moderate, marked, or extreme. *Id.* If the degree of limitation is none or mild, the impairment is not severe. *Id.* If the impairment is severe, the ALJ then determines if the impairment meets or is equivalent in severity to a listed mental disorder by comparing medical findings concerning the impairment and the rating of functional limitation to the criteria of the appropriate listed mental disorder. *Id.* If the ALJ finds that the plaintiff has "a severe mental impairment(s) that

---

[11] 20 C.F.R. § 404.1520a (2011) was effective from June 13, 2011 until January 16, 2017, and Plaintiff filed his disability claims on January 2, 2013.

neither meets nor is equivalent in severity to any listing, [the ALJ] will then assess [the plaintiff's] residual functional capacity." *Id.*

The ALJ's conclusion that Plaintiff was moderately to markedly limited in concentration, persistence, or pace was part of the PRT, which occurs at steps two and three to assist the ALJ in determining whether the plaintiff's mental impairment is severe. In this case, the ALJ concluded that Plaintiff's anxiety, depression, and ADHD were severe. AR 13. Plaintiff, however, conflates a limitation finding as part of the PRT at steps two and three with the ALJ finding a limitation at steps four and five of the sequential evaluation process. According to Social Security Ruling ("SSR") 96-8p:

> [T]he Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria *are not an RFC assessment* but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF[.]

1996 WL 374184 at *4 (emphasis added).[12] This PRT process is not used to assess Plaintiff's RFC, and SSR 96-8p clearly dictates that limitations identified as part of the PRT are not an RFC assessment. *See id.* Therefore the ALJ did not err by not accounting for his paragraph B limitation in the PRT in Plaintiff's RFC.

The ALJ carefully considered Plaintiff's testimony and the medical evidence of record along with the medical opinions to determine Plaintiff's RFC. Furthermore, the ALJ's RFC

---

[12] Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1) (2007).

comprehensively took into account all of Plaintiff's limitations as set forth by the medical opinions. The Court therefore affirms the ALJ's RFC as supported by substantial evidence.

**B.** **The ALJ's evaluation of Dr. Valle's opinion was supported by substantial evidence and adequately explained.**

Plaintiff argues that the ALJ improperly granted great weight to Dr. Valle's opinion because he did not explain the weight assigned to her opinion and rendered his own medical opinion. Pl.'s Mot. 18-19. The Commissioner asserts that the ALJ properly considered the factors set forth by 20 C.F.R. § 404.1527 (2017)[13] in weighing medical opinions, and was not required to explicitly mention each factor. Def.'s Resp. 10. The Court agrees with the Commissioner.

First, the ALJ did not render his own medical opinion; he merely stated that he agreed with Dr. Valle's conclusion that Plaintiff had "adapted well to his strengths" "despite his allegations of mental deficiency." *See* AR 17, 334. The ALJ also adequately explained the weight he assigned to Dr. Valle's opinion. The ALJ explained that Dr. Valle's opinion was consistent with Dr. King's and with the medical records. AR 16. Dr. Valle also included limitations, such as Plaintiff avoiding jobs that require extensive writing and detailed or technical reading, that were based on Plaintiff's own account that he struggled with writing and reading, and which the ALJ accounted for in the RFC. AR 15, 334. Further, Plaintiff's testimony about his work history supported Dr. Valle's conclusion that Plaintiff had adapted well to his limitations and learned to utilize his strengths. Plaintiff was not terminated from his jobs because of inability to perform the jobs; rather, he was terminated because of a positive marijuana test, being charged with DUI, and for not making his child support payments. AR 37-

---

[13] 20 C.F.R. § 404.1527 (2017) explicitly applies to evaluating opinion evidence for claims before March 27, 2017, and thus applies to Plaintiff's claims.

40.  Similarly, Plaintiff left a previous job in Texas to care for his ill father in New Mexico, not because he could no longer do the job.  AR 38.

20 C.F.R. §404.1527 sets forth the following factors ALJs use to weigh medical opinions: examining relationship, treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention or of which the ALJ is aware.  Explicit discussion of the factors is not required as long as the ALJ considered them.  *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review.").  "[T]he ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  Although *Oldham* and *Krauser* concerned the evaluation of a treating physician's opinion, and Dr. Valle was not a treating physician, the § 404.1527 factors are utilized to evaluate all medical opinions, not just treating physician opinions.  *See* 20 C.F.R. § 404.1527.

The ALJ considered the first factor, examining relationship, because the Court infers from the ALJ's review of Dr. Valle's report that the ALJ understood that she examined Plaintiff. The second factor, whether Dr. Valle treated Plaintiff, does not apply to Dr. Valle because she only examined him one time, as opposed to engaging in a longer-term treatment of him.  With respect to the supportability factor, Dr. Valle did not have any other opinions to consider at the time she rendered her opinion, and she primarily relied on Plaintiff's statements and her observations of Plaintiff to craft her opinion.  AR 333-334.  The ALJ considered the consistency factor, or whether a medical opinion is consistent with the record as a whole.  The ALJ devoted a

detailed section of his opinion to how Dr. King's opinion and Dr. Valle's opinion were consistent with each other and also consistent with observations from Plaintiff's treating counselor, Ms. Lawhenore. AR 16. The ALJ did not explicitly discuss specialization, the fifth factor, but the Court nonetheless infers that the ALJ considered it because he considered Dr. Valle's report, which stated that she is a licensed psychologist. AR 334. Although the ALJ did not explicitly refer to some of these factors, he was not required to, and the ALJ's explanation was adequate enough to allow this Court to conduct meaningful review of his evaluation of Dr. Valle's opinion. *See Oldham*, 509 F.3d at 1258. The Court concludes that the ALJ's assignment of great weight to Dr. Valle's opinion was supported by substantial evidence.

### C. The VE's testimony is substantial evidence supporting the ALJ's finding that Plaintiff is not disabled.

Plaintiff argues that, because the RFC is not supported by substantial evidence, the VE's testimony cannot constitute substantial evidence to support the ALJ's finding that Plaintiff is not disabled. Pl.'s Mot. 20. Because the Court concluded that the ALJ's RFC was supported by substantial evidence, the Court does not further consider this argument. Plaintiff next argues that the ALJ did not provide to the VE in his hypothetical questions Plaintiff's need to have instructions repeated, and that limitation precludes the SVP 2 jobs that the VE found Plaintiff could perform. *Id.* at 21-22. As the Court previously discussed, Dr. King did not conclude that Plaintiff needed to have instructions repeated, but even if Dr. King had done so, SVP 2 jobs are the only jobs that allow for that kind of repetition.

The ALJ presented several different hypotheticals to the VE, some of which included limitations that were later not included in the RFC and were clearly not supported by substantial evidence. *See* AR 58-61. The problem for Plaintiff is that although the ALJ asked about indefinite reminders twice a day, there is no evidence in the record that supports a conclusion

that Plaintiff requires indefinite reminders twice a day, and Plaintiff does not point the Court towards such evidence.[14] Without the added condition of indefinite reminders twice a day, the VE had identified three jobs with a SVP of 2 that Plaintiff could perform given the ALJ's RFC. Because the ALJ presented hypotheticals to the VE that included the limitations in his RFC, which the Court has concluded was supported by substantial evidence, the VE's testimony constitutes substantial evidence supporting the ALJ's finding that Plaintiff is not disabled.

## VI. CONCLUSION

For the reasons articulated above, the Court holds that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum [ECF No. 20] is **DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause is **DISMISSED.**

**IT IS SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*

---

[14] The Court notes that the ALJ also asked the VE whether the same hypothetical individual, who rather than requiring indefinite reminders twice a day instead was "unable to consistently concentrate or stay on task for two-hour periods of time," could perform any of the jobs the VE identified. AR 61. The VE responded that the person would not be able to perform any job in the national economy. AR 61-62. Plaintiff did not argue that the ALJ should have taken into account this limitation, perhaps because there is similarly no evidence that Plaintiff had such a limitation.